IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UBLESTER MUNDO-VIOLANTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:15-cv-00064 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| JOHN F. KERRY, SECRETARY OF | ) | United States District Judge |
| STATE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Ublester Mundo-Violante, proceeding *pro se*, has filed a verified petition asking the court for a declaratory judgment that he is a United States citizen. His suit names as defendants John F. Kerry, Secretary of State, and Jeh Johnson, Secretary of the Department of Homeland Security. In support of his request, Mundo-Violante cites two statutes—8 U.S.C. § 1503(a), which sets forth the process for obtaining a declaration of United States citizenship, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The court ordered that defendants be served, and they have now filed a joint motion to dismiss and for summary judgment, raising various challenges to the viability of Mundo-Violante's petition. Defendants first seek dismissal under Federal Rule of Civil Procedure 12(b)(1), on the ground that this court lacks jurisdiction over Mundo-Violante's petition, both because he has failed to exhaust his administrative remedies and because "[t]he Court has no authority to award citizenship to [Mundo-Violante]." (Mot. to Dismiss 1, Dkt. No. 14.) Defendants also claim that they are entitled to summary judgment because Mundo-Violante does not meet the statutory requirements for citizenship.

In support of their motion, defendants filed declarations from employees of the United States Citizenship and Immigration Services (USCIS). The declarations either contain documents related to Mundo-Violante's prior attempts to establish United States citizenship or testimony that there is an absence of such documents (such as internal appeals from Mundo-Violante or his adoptive mother, who separately petitioned for citizenship on his behalf). (Dkt. Nos. 15-1 to 15-7.)

The court provided Mundo-Violante with the notice required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), but Mundo-Violante did not file a response to the motion to dismiss and for summary judgment. (Dkt. No. 16). Instead, he filed separate motions to strike each of the declarations attached to the motion. (Dkt. Nos. 19–24.) Each of the motions to strike raises identical arguments, but is directed toward a different declaration. Defendants have filed a response in opposition to the motions to strike. (Dkt. No. 26.)

For the reasons discussed herein, the court will deny the motions to strike. The court further advises Mundo-Violante that his motions to strike are not responsive to defendants' motion, and he has therefore failed to respond timely to that motion. He will be required, therefore, to show cause as to why the motion to dismiss and for summary judgment should not be granted. If he fails to respond within 21 days, this case may be dismissed because of his failure to prosecute it.

I. BACKGROUND

Mundo-Violante, who was born in Mexico in 1983, was adopted shortly before his 16th birthday by both his adult brother, a non-United States citizen, and his brother's wife, a United States citizen. At the time he filed his petition in this case, he was 32 years old and stated he had lived in the United States continuously for more than 20 years. He claims that he is therefore

2

eligible for United States citizenship, that he has provided proof of that citizenship, and that he has "exhausted all of his administrative remedies." (Pet. 1–3, Dkt. No. 2.)[1]

Attached to Mundo-Violante's petition are various exhibits, including the order of adoption, a Virginia birth certificate issued to him afterward, and what appears to be a form appealing the denial of his citizenship application, although there is no indication that it was sent to, or received by, USCIS. (Pet. Exs. A–B, Dkt. No. 2-1.) While his petition states that several documents or prior court decisions found him to be "a national of the United States of America," none of the documents he references contain such a declaration. The court thus does not credit his averments that those documents declare him to be a national, because where there is a "conflict between the bare allegations of the complaint and any exhibit attached [to the complaint], . . . the exhibit prevails." *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013).

Mundo-Violante does not cite to the Child Citizenship Act of 2000 (CCA), 8 U.S.C. § 1431, but it appears that his claim for citizenship relies on the CCA. In relevant part, the CCA allows an adopted child to claim citizenship through a citizen parent if he meets certain requirements. First, to be an adoptive child, he must have been legally adopted while under the age of 16 and resided in the legal custody of the adoptive parent for at least two years. 8 U.S.C. § 1431(b). Then, he must also: (1) have at least one United States citizen parent; (2) be under 18 years of age as of the date the CCA went into effect; and (3) be residing in the United States in the legal and physical custody of the citizen parent *as lawfully admitted for permanent residence*. *Id.* § 1431(a) (emphasis added). The emphasized term is defined in the Immigration and Nationality Act (INA) as "the status of having been lawfully accorded the privilege of residing

---

[1] Unless otherwise noted, the facts recited in this section are derived from Mundo-Violante's petition and documents integral to the petition. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C § 1101(a)(20).

Defendants' motion contains five declarations from Michael Horvath and one from Jessica Dumas, both USCIS employees, nearly all of which include documentation or statements pertaining to Mundo-Violante's prior attempts to obtain citizenship. Those documents reflect that Mundo-Violante filed a Form N-600, Application for Certificate of Citizenship, in February 2013. (Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 2 at 2–8, Dkt. No. 15-2.) That application was denied on September 6, 2013, because Mundo-Violante failed to show that he was ever a lawful permanent resident of the United States, and thus failed to satisfy all of the requirements of the CCA. (*Id.* at 7–8; *id.*, Ex. 3 at 2–3, Dkt. No. 15-3.) The denial letter explains that Mundo-Violante entered the United States without inspection on May 10, 1996, and that he was "never granted lawful permanent resident status." (*Id.*, Ex. 3 at 3.) Notably, nothing in Mundo-Violante's N-600 Form shows otherwise. In fact, where the application asked how and when he became a permanent lawful resident, he responded "unknown." (*Id.*, Ex. 2 at 3.)

Mundo-Violante was notified of his right to appeal the denial to the Administrative Appeals Office (AAO), by filing a Form I-290B within 30 days and paying a $630 filing fee. (*Id.*, Ex. 3.) The denial letter explained that the form could be sent to the Pittsburgh USCIS office. (*Id.*) There is no record of him having ever appealed, according to the affidavits submitted by defendants.[2] (*Id.*, Ex. 4, Dkt. No. 15-4.) For example, Horvath states that, based on his personal review of both Mundo-Violante's alien registration file and USCIS electronic

---

[2] Additionally, in 2002, Mundo-Violante's adoptive mother filed a "Petition for Alien Relative," in which she sought citizenship on his behalf. (Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 6 at 2–3, Dkt. No. 15-6.) The INS responded to the petition requesting additional information. (*Id.*, Ex. 7, Dkt. No. 15-7.) When no information was provided in response, the INS denied the petition. (*Id.*) Notably, though, his mother was asked how he arrived in the United States, and she answered "EWI," which is a common abbreviation for "entry without inspection." (*Id.*, Ex. 6 at 2.)

4

records, there is no record of Mundo-Violante's "ever filing with the Pittsburgh Field Office or any other USCIS office a Form I-290B to appeal" the denial of his N-600. (Defs.' Mem., Ex. 4, ¶ 4.) Likewise, Jessica Dumas, who is the Chief of Staff for USCIS's AAO, avers that, based on her review of the AAO's records, the office "has no record of Mr. Mundo-Violante ever filing a Form I-290B to appeal the Pittsburgh denial of his N-600." (*Id.*, Ex. 5, ¶¶ 1, 4, Dkt. No. 15-5.)

In his petition, Mundo-Violante details his attempts to exhaust as follows:

- On or before September 6, 2013, he applied to INS for official citizenship documentation, which was refused.

- On or before September 6, 2013, he made an "application to appeal the 'INS' failure by its want of hearing. This application for review also went unanswered and non-responsive."

- On or before September 6, 2013, he applied to "the Office of the State Department and Secretary of State for official citizenship documentation," but did not obtain any certificate of citizenship.

- On or before August 18, 2014, he applied to this court seeking citizenship, but his filing was construed as a petition under 28 U.S.C. § 2241 and denied for want of jurisdiction.[3]

(Pet. 4.)

---

[3] Although he does not provide a case number for this prior action, the court believes that he is referring to *Mundo-Violante v. United States*, 7:13-cv-81 (W.D. Va. Feb. 26, 2013), in which Judge Wilson of this court construed the filing as a § 2241 petition and dismissed it without prejudice for lack of jurisdiction, because Mundo-Violante was incarcerated in Pennsylvania. In contrast to a § 2241 petition, an action like this one "shall be filed in the district court of the United States for the district in which such person resides or claims a residence . . . ." 8 U.S.C. § 1503(a). Mundo-Violante is incarcerated at Loretto FCI in the Western District of Pennsylvania, but it appears that he resided prior to his incarceration within the Western District of Virginia. Based on these facts, it is not entirely clear to the court that venue is proper here. *Compare, e.g., Lindsey v. United States*, No. 2:06-cv-33, 2006 WL 2060651, at *2 (N.D.W. Va. July 21, 2006) ("[T]he weight of authority has found that a prisoner's place of incarceration is not his residence for purposes of venue."), *with Royer v. Fed. Bureau of Prisons*, No. 1:10-cv-146, 2010 WL 4827727, at *4 (E.D. Va. Nov. 19, 2010) (distinguishing a person's "domicile" and "residence" and concluding that, for purposes of venue under the Freedom of Information Act or the Privacy Act, a prisoner resides where he is incarcerated). But defendants have not challenged the propriety of venue here, and thus the court will allow the case to remain in this court. *See* Fed. R. Civ. P. 12(h) (designating improper venue as a waivable defense); *Liversage v. Nationwide Debt Mgmt. Sols., LLC*, No. 15-1266, 2016 WL 106301, at *3 n.1 (Report & Recommendation) (D. Md. Jan. 11, 2016) (explaining that the Fourth Circuit has not addressed the issue, but that "many federal circuits hold that district courts may not raise the issue of improper venue *sua sponte*").

II.  DISCUSSION

**A.  Plaintiff's Motions to Strike**

Because Mundo-Violante seeks to strike affidavits submitted in support of both a Rule 12(b)(1) and a summary judgment motion, the court discusses what types of documents may generally be considered in those contexts.  The first part of defendants' motion is brought pursuant to Rule 12(b)(1), which challenges the court's subject-matter jurisdiction over plaintiff's claim.  The plaintiff bears the burden of establishing that subject-matter jurisdiction exists.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

The Fourth Circuit has recognized that there are two distinct ways in which a defendant can challenge subject-matter jurisdiction.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  The first is to make a facial challenge, by contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based."  *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Id.*

The second way is to assert, as defendants do here, "that the jurisdictional allegations of the complaint [are] not true."  *Id.* (quoting *Adams,* 697 F.2d at 1219).  Where this type of challenge is made, "[a] trial court may then go beyond the allegations of the complaint and . . . determine if there are facts to support the jurisdictional allegations," without converting the motion to a summary judgment proceeding.  *Id.* (quoting *Adams*, 697 F.2d at 1219).  In addressing this second type of challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction," *id.*, "[u]nless the jurisdictional facts are

intertwined with the facts central to the merits of the dispute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (internal quotation marks and citation omitted). In resolving the jurisdictional facts in dispute, the court may review evidence outside the pleadings, such as affidavits. *Id.* at 348.

Under this standard, the court is permitted to look to declarations such as those submitted by defendants, as part of ruling on the factual challenge to jurisdiction, as well as in ruling on the summary judgment motion. *See* Fed. R. Civ. P. 56(c). Thus, it is necessary to resolve Mundo-Violante's motions to strike and determine whether the specific declarations here may be considered.

In his motions, Mundo-Violante argues that the declarations are "fatally defective," an assertion he appears to base on several grounds. (Mot. to Strike 1, Dkt. No. 19.) Principally, he claims that the declarations should be struck because they are based not on personal knowledge, but on hearsay. (*Id.* at 2.) And in a related contention, he posits that there is not "substantiation" that the declarants were employed by USCIS at the relevant time. (*Id.*)[4]

There is no merit to any of the arguments in the motions to strike.[5] As an initial matter, Mundo-Violante is incorrect that the declarants' testimony is not based, at least to some degree, on personal knowledge. Both Horvath and Dumas aver that they personally reviewed the files of

---

[4] He also argues that the declarations are not part of the underlying record "of this declaratory-administrative proceeding." (Mot. to Strike 2, Dkt. No. 19.) The court is not sure what he means by this, but in this separate legal action, the court may consider documents outside of those submitted to the USCIS.

[5] Mundo-Violante does not appear to be challenging the *authenticity* of the documents. But in any event, such public records are generally authenticated "by proof of custody, without more." Fed. R. Evid. 901(b)(7) advisory committee's note; *United States v. Farah*, 475 F. App'x 1, 9–10 (4th Cir. 2007) (concluding that documents from immigration file were properly authenticated where an "INS record custodian had knowledge of documents kept by the INS and testified that the documents in the . . . files are what the Government claims"); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 548 (D. Md. 2007) ("Examples of the types of public records 'that may be authenticated by Rule 901(b)(7) include . . . INS records." (citation omitted)). *See also United States v. Bryant*, 417 F. App'x 220, 228 (4th Cir. 2008) (recognizing that a "certification of nonexistence of records" from ICE can be admitted as a self-authenticating public record) (citing *United States v. Mendoza-Orellana*, 133 F. App'x 68, 70 (4th Cir. 2005) (per curiam)).

their respective offices. As to his claims that the declarations or attached documents are inadmissible hearsay, he is also incorrect. "It is well established that employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute appropriate summary judgment evidence." *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008) (citing Fed. R. Evid. 803(6)). Based on this rule, the declarations here are not inadmissible hearsay because both declarants are "familiar with the record-keeping" of USCIS. For example, Dumas avers that that she is "responsible for overseeing daily operations at the [AAO]" and is "very familiar with the manner in which applications are processed," as well as how appeals are logged in the mailroom. (Defs.' Mem., Ex. 5, ¶¶ 1–2.) Likewise, Horvath avers that as a Field Office Director for the USCIS, he has "access to and regularly work[s] with the original files maintained by USCIS in its Pittsburgh, PA office." (*Id.*, Ex. 2 at 1.) He also states that he has compared the copies of the documents attached to his declarations to the documents in USCIS's original files, and that they are the same. (*Id.*, Exs. 3, 6, 7 at 1.)

Significantly, moreover, the Fourth Circuit has affirmed the admission of documents from an immigration file, noting that they are admissible as business records under Rule 803(6). *United States v. Farah*, 475 F. App'x 1, 9–10 (4th Cir. 2007). Likewise, there is a specific exception to the general prohibition against hearsay for public records, which is likely also applicable here. Fed. R. Evid. 803(8) (hearsay exception for public records).

The declarants also have testified about the non-existence of certain records, and specifically that USCIS has no record of any appeals from the denials of the petitions filed by Mundo-Violante and his adoptive mother. This testimony, too, is permitted as an exception to the hearsay rule, both for business records and public records. Fed. R. Evid. 803(7) (providing

8

that evidence that a matter is not included in a business record may be admitted to prove that the matter did not occur or exist, so long as "a record was regularly kept for a matter of that kind" and the opponent cannot show a "lack of trustworthiness"); Fed. R. Evid. 803(10) (same as to public records).

In sum, the declarations here satisfy the requirements for authenticating the documents attached to them and are not barred by the hearsay rule as Mundo-Violante claims. They are thus admissible, and the court may consider them in ruling on defendants' motion. Accordingly, all of Mundo-Violante's motions to strike will be denied.

**B. Defendants' Motion to Dismiss and for Summary Judgment**

As already noted, the court is not ruling on defendants' motion at this time, and instead will give Mundo-Violante an opportunity to show cause as to why that motion should not be granted. Nonetheless, the court will briefly discuss the analytical framework applicable to the petition, in part so Mundo-Violante, who is proceeding *pro se*, will focus any response on the pertinent issues.

Mundo-Violante seeks relief under 8 U.S.C. § 1503, which states:

> (a) *Proceedings for declaration of United States nationality*
> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding. An action under this subsection may be instituted only within five years *after the final administrative denial of such right or privilege* and shall be filed in the district court of the United States for the

9

> district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503 (emphasis added).

Courts addressing this provision often have interpreted the emphasized language as requiring an exhaustion of administrative remedies, and thus requiring that a plaintiff pursue all available appeals before seeking relief in court. *See Johnson v. Whitehead*, 647 F.3d 120, 125 (4th Cir. 2011); *Xia v. Kerry*, 73 F. Supp. 3d 33, 45 (D.D.C. 2014); *Harris v. Dep't of Homeland Sec.*, 18 F. Supp. 3d 1349, 1357 (S.D. Fl. 2014); *Patino v. Chertoff*, 595 F. Supp. 2d 310, 313 (S.D.N.Y. 2009). *But see Florina Ortega-Morales v. Lynch*, No. 14-cv-2024, 2016 WL 891569, at *3–7 (D. Ariz. Mar. 9, 2016) (reasoning that the statements in many of these cases, including *Johnson*, are either dicta or not well-supported; asserting that nothing in the statute or the related regulations requires exhaustion; and holding that it is not necessary for a petitioner to appeal the denial of a citizenship application in order to bring an action under 8 U.S.C. § 1503).[6]

At least some courts have concluded that, absent such exhaustion, a court does not have jurisdiction over a claim brought pursuant to Section 1503(a). *See, e.g.*, *Harris*, 18 F. Supp. 3d at 1355–56 (collecting authority and concluding "that Section 1503(a)'s exhaustion requirement is jurisdictional"); *Place v. Dep't of Homeland Sec.*, No. L-10-781, 2010 WL 1416136, at *2 (D. Md. Apr. 6, 2010) ("It is well-established under the case law that district courts do not have jurisdiction to declare citizenship absent exhaustion of an applicant's administrative remedies.").

---

[6] While the court's analysis in *Ortega-Morales* is thorough and makes some persuasive points, that court also noted that neither *Johnson*, nor the other cases with which the *Ortega-Morales* court disagreed, were binding on it. By contrast, this court *is* bound by *Johnson*. Even assuming the *Johnson* court's statements are properly characterized as dicta, "a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum." *Branch v. Coca-Cola Bottling Co. Consol.*, 83 F. Supp. 2d 631, 634–35 (D.S.C. 2000) (citations omitted); *see also McCravy v. Met. Life Ins. Co.*, 690 F.3d 176, 181 n.2 (4th Cir. 2012) (recognizing that lower courts are "bound by Supreme Court's dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by any subsequent statement" (citations omitted)). Thus, the court follows *Johnson* here.

*But see Ortega-Morales*, No. 14-cv-2024, 2016 WL 891569, at *4 n.3 (holding that there is no requirement of statutory exhaustion for § 1503 actions, but even if there were, questioning whether it would be jurisdictional exhaustion).

As noted, defendants' primary argument in their motion to dismiss is that this court lacks jurisdiction over Mundo-Violante's petition because he failed to appeal the denial of his request for citizenship, and thus failed to exhaust. *Johnson*, 647 F.3d at 125 (explaining that where the petitioner "failed to appeal the rejection of his Form N-600 Application for Certificate of Citizenship," he had not exhausted his remedies under § 1503(a) because there was no "final administrative denial"). In support of their argument, defendants rely on the Horvath and Dumas declarations that no such appeal was ever received by USCIS or its AAO.

Mundo-Violante's petition seems to dispute this factual contention. He has attached what appears to be a form to appeal the denial of his N-600 application, although there is no indication that the form was ever sent to or received by USCIS, and Horvath and Dumas have testified that it is not in USCIS's records. Mundo-Violante also alleges in conclusory terms that he "duly exhausted all administrative remedies as required by law." (Pet. ¶ 14.) He has not provided any additional information as to when he filed any appeal or to whom it was mailed, nor has he provided any proof of mailing. To the extent that Mundo-Violante has any such information, he should provide it in his response.

If the court were to find that Mundo-Violante had properly exhausted his administrative remedies, it would then address defendants' motion for summary judgment. As noted, in that motion, defendants contend that he does not qualify for citizenship because he was never a lawful permanent resident, as required under the CCA. Any response by Mundo-Violante to the summary judgment motion should also address, therefore, whether he has satisfied all the

requirements for citizenship under 8 U.S.C. § 1431, including whether he was residing in the custody of his adoptive mother as a lawful permanent resident, and any existing documentation that he was. § 1431(a).

To summarize, the court will order that Mundo-Violante show cause as to why the motion to dismiss and for summary judgment should not be granted, and will give him this last opportunity to file a substantive response to the motion. If he wishes to continue with this lawsuit, he must file a response not later than 21 days after entry of the accompanying order. His response should include any additional documents or sworn testimony that he wants the court to consider, and it should address the primary contentions raised by defendants' motion: (1) that he did not exhaust his administrative remedies because he failed to appeal the denial of his N-600 application for citizenship; and (2) that he is not entitled to a declaration of citizenship because he was never a lawful permanent resident.

If he fails to file a timely response to the motion, this lawsuit may be dismissed because of his failure to prosecute.

### III. CONCLUSION

For the foregoing reasons, the court will deny Mundo-Violante's motions to strike, and will direct Mundo-Violante to file any response to the motion to dismiss and for summary judgment not later than 21 days after entry of the accompanying order. **If he fails to file a timely response, this case may be dismissed for failure to prosecute.**

An appropriate order will follow.

Entered: April 18, 2016.

/s/ *Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge