IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UBLESTER MUNDO-VIOLANTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:15-cv-00064 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| JOHN F. KERRY, SECRETARY OF ) | United States District Judge |
| STATE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Ublester Mundo-Violante, proceeding *pro se*, has filed a verified petition asking the court for a declaratory judgment that he is a United States citizen. His suit names as defendants John F. Kerry, Secretary of State, and Jeh Johnson, Secretary of the Department of Homeland Security. In support of his request, Mundo-Violante cites two statutes—8 U.S.C. § 1503(a), which provides a cause of action to a person seeking a declaration of United States citizenship, and 28 U.S.C. § 2201, the Declaratory Judgment Act.

Defendants filed a motion for summary judgment, contending that Mundo-Violante does not meet the requirements for citizenship because he was not lawfully admitted for permanent residence, as required by the Child Citizenship Act of 2000 (CCA), 8 U.S.C. § 1431.[1] In response, Mundo-Violante filed his own motion for summary judgment, arguing that he has demonstrated his United States citizenship by the exhibits attached to his petition. Alternatively, he contends that the facts set forth in his petition and response show that he has met the

---

[1] In their motion, defendants also sought dismissal under Federal Rule of Civil Procedure 12(b)(1) on the ground that Mundo-Violante failed to exhaust his administrative remedies. They have since opted not to pursue that argument. (Defs.' Reply to Pl.'s Resp. 3, Dkt. No. 31 (Defs.' Reply).) As a result, the court will address only defendants' motion for summary judgment.

requirements of the CCA and that he is entitled to United States citizenship.[2] (Pl.'s Resp. & Mot. for Summ. J. 2, Dkt. No. 29 (Pl.'s Resp.).) For the reasons stated below, the court will deny Mundo-Violante's motion and grant defendants'.

## I. BACKGROUND

To put the factual background in proper context, the court will first discuss the CCA's provisions. In relevant part, the CCA allows an adopted child to claim citizenship through a citizen parent if he meets certain requirements. First, to be an adoptive child, he must have been legally adopted while under the age of sixteen and resided in the legal custody of the adoptive parent for at least two years. 8 U.S.C. § 1101(b)(1). Then, he must also: (1) have at least one United States citizen parent; (2) be under eighteen years of age; and (3) be residing in the United States "in the legal and physical custody of the citizen parent pursuant to a *lawful admission for permanent residence.*" *Id.* § 1431(a) (emphasis added); *see also Ojo v. Lynch*, 813 F.3d 533, 535 (4th Cir. 2016) (outlining the CCA's requirements).

Mundo-Violante, who was born in Mexico in 1983, was adopted shortly before his sixteenth birthday by both his adult brother, a non-United States citizen lawfully admitted for permanent residence, and his brother's wife (Mrs. Mundo), a United States citizen. (Pet., Ex. 1 at 4, Dkt. No. 2-1.) Approximately two years after the adoption, Mrs. Mundo submitted a Form I-130 Petition for Alien Relative to establish her relationship to Mundo-Violante as one that allows him to obtain a visa or adjustment of status. In that petition, she noted that Mundo-Violante last arrived in the United States through "EWI" (entry without inspection).[3] (Mem. in

---

[2] In his response, Mundo-Violante also cites 8 U.S.C. § 1432, which was repealed after his adoption. (Pl.'s Resp. 8.) Because both statutes require lawful admission for permanent residence—the main issue here—the court will refer only to the CCA throughout its analysis.

[3] Defendants suggest that the relationship between Mundo-Violante and his adoptive father as "nephew and uncle" would prevent a successful Petition for Alien Relative. (Defs.' Reply 5.) Instead, they submit, "family-based petitioners are limited to . . . parents, [and] siblings . . . ." *Id.* But the fact that defendants mistakenly referred to

2
Case 5:15-cv-00064-EKD   Document 35   Filed 07/08/16   Page 2 of 9   Pageid#: 250

Supp. of Mot. to Dismiss, Ex. 6, Dkt. No. 15-6 (Defs.' Mem.).) United States Citizenship and Immigration Services (USCIS) denied the petition after Mrs. Mundo failed to respond to a request for additional information.[4] (*Id.*, Ex. 7 at 3, Dkt. No. 15-7.) Several years later, in 2013, Mundo-Violante completed an N-600 Application for Certificate of Citizenship, answering "unknown" when asked when and where he became a lawful permanent resident (LPR). (*Id.*, Ex. 2 at 3, Dkt. No. 15-2.) Without any record that Mundo-Violante had LPR status as required, USCIS also denied this application. (*Id.*, Ex. 3 at 2–3, Dkt. No. 15-3.) Nonetheless, Mundo-Violante maintains that he is entitled to citizenship.

## II. STANDARD OF REVIEW

Summary judgment may be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits . . . [and] 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316, F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The party opposing the motion, however, "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth

---

Mundo-Violante's brother as his uncle in their reply is of no moment. Although defendants misstate the relationship, they are nevertheless correct that Mundo-Violante's brother could not submit a Form I-130 on his behalf. *I-130, Petition for Alien Relative*, U.S. Citizenship & Immigr. Servs. (June 14, 2015), https://www.uscis.gov/i-130 (requiring sibling petitioners to be United States citizens). Regardless, Mundo-Violante's brother never submitted a Form I-130.

[4] Mrs. Mundo's failure to respond to the USCIS's request likely did not affect Mundo-Violante's ultimate goal of obtaining citizenship. Mundo-Violante turned eighteen on July 10, 2001—three days before Mrs. Mundo submitted the Form I-130—and thus would have been ineligible for citizenship under the CCA regardless of the decision by the USCIS. 8 U.S.C. § 1431; *see also Ojo*, 813 F.3d at 538 n.3 (noting that the Attorney General argued that a person is ineligible for citizenship under the CCA where he did not become a lawful permanent resident prior to turning eighteen). Furthermore, Form I-130 establishes only the relationship required for an alien to apply for an immigrant visa or adjustment of status. If the USCIS had approved her petition, Mrs. Mundo or Mundo-Violante would have had to submit additional paperwork to obtain LPR status and subsequent citizenship.

3

specific facts'" showing a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). Parties may point to such facts by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

### III. DISCUSSION

The primary legal issue in this case is whether Mundo-Violante is entitled to a declaration that he is a United States citizen under 8 U.S.C. § 1503(a).

> "A suit under section 1503(a) is not one for judicial review of the agency's action. Rather, section 1503(a) authorizes a *de novo* judicial determination of the status of the plaintiff as a United States national." *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985). In an action under § 1503(a), the "burden of proof is on the claimant to prove that [he or] she is an American citizen." *De Vargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958).

*Abimbola v. Clinton*, No. 11-cv-3677, 2012 U.S. Dist. LEXIS 158967, at *5–6 (D. Md. 2012) (alterations in original).

Mundo-Violante first argues that several of the documents and court decisions attached as exhibits to his petition deemed him a citizen of the United States. (Pet. 2.) Of the documents he references, which include the order of adoption from Rockingham County Circuit Court and the Virginia birth certificate issued pursuant to that adoption, none contain such a declaration. (Pet., Ex. 1.) Although the order of adoption grants him "all the rights and privileges . . . of a child of [his adoptive parents] born in lawful wedlock," (*Id.* at 5), the state court does not purport to confer citizenship—nor could it. *See Barnes v. Holder*, 625 F.3d 801, 805 (4th Cir. 2010) ("[The Department of Homeland Security] is the only body statutorily vested with the power to make naturalization decisions in the first instance . . . ."). As for Mundo-Violante's Virginia birth

4

certificate, it explicitly states, "THIS CERTIFICATE IS NOT EVIDENCE OF UNITED STATES CITIZENSHIP FOR THE CHILD OR PARENTS NAMED ABOVE." (Pet., Ex. 1 at 1.) Thus, contrary to his argument, Mundo-Violante has not identified any materials from the record supporting his claim of United States citizenship.

Next, Mundo-Violante asserts that the CCA conferred citizenship upon him at his adoption. (Pl.'s Resp. ¶ 10.) Defendants disagree, arguing that Mundo-Violante never entered the country lawfully or obtained LPR status, and thus failed to satisfy the CCA's requirement that he be "lawfully admitted for permanent residence."[5] (Defs.' Reply 5.)

The Immigration and Nationality Act defines "lawfully admitted for permanent residence" as "having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigrational laws, such status not having changed." 8 U.S.C. § 1101(a)(20). Notably, this differs from the definition of "admitted," which includes lawful entry "after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13); *see also Mendoza Leiba v. Holder*, 699 F.3d 346, 355 (4th Cir. 2012) (distinguishing between "admitted" and "lawfully admitted for permanent residence" for the purposes of a § 1182(h) waiver of removal). Therefore, the LPR requirement of the CCA does not necessarily mean that an immigrant must have entered the country lawfully. Instead, an alien may obtain LPR status through a post-entry application for an adjustment of status. *See, e.g., Mendoza Leiba*, 699 F.3d at 347 (recognizing that the plaintiff, an illegal immigrant, obtained LPR status through an adjustment application); *Bracamontes v. Holder*, 675 F.3d 380, 382 (4th Cir. 2012) (same).

Mundo-Violante's filings in this court allege several methods through which he may have become an LPR. First, he claims that the CCA automatically grants LPR status through

---

[5] Defendants do not dispute that Mundo-Violante has satisfied the other CCA requirements.

adoption. (Pl.'s Resp. ¶ 8.) Not only does the plain language of the statute refute this argument, but courts have rejected it as well. In a similar case of foreign-born adoption, for example, the Eleventh Circuit emphasized that "[i]n order for a child adopted by a U.S. citizen parent to automatically acquire citizenship under § 1431, the child must be admitted as an LPR." *Milakovich v. USCIS-Orlando*, 500 F. App'x 873, 875 (11th Cir. 2012) (citing 8 U.S.C. § 1431(a)(3)). Further, if the mere fact of adoption granted LPR status, the CCA's requirement that the child reside in the United States as lawfully admitted for permanent residence would be superfluous. "'[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause' is rendered 'superfluous, void, or insignificant.'" *Young v. UPS*, 135 S. Ct. 1338, 1352 (2015) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

Second, Mundo-Violante contends that he was "residing in the United States . . . pursuant to an automatic juvenille [sic] permanent residence and lawful permanent residence of adoptive father." (Pl.'s Resp. ¶ 12.) The court understands him to be arguing that he inherited LPR status from his adoptive father. The United States Supreme Court has noted, however, that "a child may enter the country lawfully, or may gain LPR status, *after* one of his parents does. A parent may therefore [have LPR status] . . . while his or her child, considered independently, does not." *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2015 (2012). Additionally, only citizens or LPRs may file a petition with USCIS on behalf of alien relatives, including children. *I-130, Petition for Alien Relative*, U.S. Citizenship & Immigr. Servs. (June 14, 2015), https://www.uscis.gov/i-130. If an LPR or citizen parent's status automatically imputed to his child, this petition procedure would be unnecessary. Thus, under the CCA, a parent's LPR status does not transfer to his child, as Mundo-Violante proposes.

Mundo-Violante also challenges the USCIS's "incorrect finding of entering the United States . . . without inspection," but has not identified any evidence in the record that establishes a genuine dispute as to this fact. (Pl.'s Resp. ¶ 17.) Notably, he only cites to his application for citizenship, on which he answered "unknown" when asked where and when he entered the country lawfully, and when he obtained lawful resident status. Moreover, Mrs. Mundo's answer of "EWI" regarding Mundo-Violante's entry status on Form I-130 shows that Mundo-Violante's adoptive parents believed he entered illegally. Mundo-Violante tries to refute this evidence by claiming that his adoptive mother "was unsure if the reference was for herself or [him]." (Pl.'s Resp. 9.) The question at issue, however, is found under a section labeled "[i]nformation about your alien relative," and Mrs. Mundo correctly answered the remaining questions with information specific to Mundo-Violante. (Defs.' Mem., Ex. 6 at 2.) Further, the court finds it highly unlikely that Mrs. Mundo, a United States citizen born in Kentucky, would answer "EWI" if she believed the question referred to her own status upon entry into the United States.

The record before the court shows no dispute of fact over whether Mundo-Violante has ever obtained LPR status. Based on the responses provided on his application for citizenship and his mother's petition, it is undisputed that Mundo-Violante entered the United States without inspection.[6] Moreover, the only application in furtherance of Mundo-Violante's adjustment to LPR status was abandoned at its infancy when Mrs. Mundo failed to reply to USCIS's request

---

[6] Defendants alternatively argue that if Mundo-Violante entered the United States lawfully, the government would have a record of a visa or other registration as documented proof. (Defs.' Reply 6.) Otherwise, Mundo-Violante would have had to gain LPR status after his entry into the United States pursuant to 8 U.S.C. § 1255, which states: "Upon the approval of an application for adjustment [of status] . . . , the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order . . . is made . . . ." Though he asserts that defendants cannot demonstrate an absence of genuine issues of material fact, Mundo-Violante has not identified any documentation supporting his claim of lawful admission.

for additional information. Therefore, Mundo-Violante has not presented any documentation to show that he ever obtained LPR status.[7]

In his sur-reply, Mundo-Violante submits additional reasons why the court should deny defendants' motion for summary judgment. He contends that this court cannot decide the issue of whether the CCA applies to his claim of citizenship because it is a matter of fact. (Sur-Reply 3.) He is incorrect. As the defendants state in their reply, "[w]hether the Plaintiff was residing in the United States pursuant to a lawful admission for permanent residence for purposes of his derivative citizenship claim under the [CCA] raises a pure question of law." (Defs.' Reply 4 (quoting *Walker v. Holder*, 589 F.3d 12, 17–18 (1st Cir. 2009) (internal quotation marks omitted)).) The court need only submit the question to a fact-finder if Mundo-Violante can show a genuine issue of material fact, which he has failed to do.[8]

## IV. CONCLUSION

Mundo-Violante has had ample opportunity to refute the facts put forth by defendants. Nevertheless, he has not presented any evidence suggesting that he ever obtained LPR status. The court thus finds no genuine issue of material fact regarding his entitlement to United States citizenship, and that defendants are entitled to judgment as a matter of law. For the foregoing reasons, the court will deny Mundo-Violante's motion and will grant defendants'.

---

[7] Mundo-Violante has submitted documentation showing that he timely filed an appeal of his Form N-600 Application for Citizenship to USCIS. (Sur-Reply, Ex. 2 at 2, Dkt. No. 32-2.) Accordingly, his attached sur-reply asks the court to strike the affidavits of USCIS employees submitted by defendants, which the court declines to do. (Sur-Reply 2, Dkt. No. 32-1.) The certified mail receipts do not have any bearing on the availability of documents showing Mundo-Violante's LPR status, nor does Mundo-Violante suggest that such documents exist, aside from those provided in the record.

[8] Inexplicably—since Mundo-Violante filed this suit invoking the court's jurisdiction—he also argues that this court lacks subject-matter jurisdiction to review hearings that he claims established his LPR status. As previously noted, however, the court is not reviewing the outcomes of past hearings or the denial of Mundo-Violante's and his mother's applications to USCIS; it merely determines that he has not shown that he in fact has LPR status so as to entitle him to a declaration of citizenship.

An appropriate order will be entered.

Entered: July 7, 2016.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge